**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

FRASERSIDE IP L.L.C., an Iowa
Limited Liability Company,

          Plaintiff,

vs.

GAMMA ENTERTAINMENT, INC., a
Canadian Entity, d/b/a PornerBros.com
and WILD BLUE MEDIA, d/b/a
PornerBros.com, www.pornerbros.com,
and JOHN DOES 1-100 and JOHN DOE
COMPANIES 1-100,

          Defendants.

No. C11-3056-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS**

———————————————

**TABLE OF CONTENTS**

**I. INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **A. Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    **B. Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    **A. Rule 12(b)(2) Standards and Personal Jurisdiction** . . . . . . . . . . . . . . 9
    **B. Personal Jurisdiction Analysis** . . . . . . . . . . . . . . . . . . . . . . . 14
        **1. General jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        **2. Specific jurisdiction** . . . . . . . . . . . . . . . . . . . . . . . . . 17
    **C. Federal Long-Arm Statute** . . . . . . . . . . . . . . . . . . . . . . . . . 21
        **1. Claim arises under federal law** . . . . . . . . . . . . . . . . . . . . 22
        **2. No state with personal jurisdiction over defendants** . . . . . . . 22
    **D. Limited Jurisdictional Discovery** . . . . . . . . . . . . . . . . . . . . . 23
    **E. Improper Venue** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

   **1.**  ***Applicable standards*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
   **2.**  ***Analysis*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
  **F.** ***Forum Non Conveniens*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**III.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Over fifty years ago, the United States Supreme Court recognized that technological advances affecting the nature of commerce would require the doctrine of personal jurisdiction to adapt and evolve along with those advances. *See Hanson v. Denckla,* 357 U.S. 235, 250-52 (1958) ("As technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase."). As predicted, the advent of internet commerce has forced courts to confront new challenges regarding personal jurisdiction and venue. Plaintiff, a producer of adult motion pictures, alleges that defendants, a Canadian corporation and its Barbadian subsidiary, have willfully violated plaintiff's copyright and trademarks by offering plaintiff's motion pictures on an Internet website they operate. However, the merits of plaintiff's claims are not presently before me. Rather, I must resolve, *inter alia*, whether plaintiff has made a *prima facie* showing that defendants have sufficient minimum contacts with Iowa to satisfy due process and permit the exercise of personal jurisdiction over them, and whether venue in this district is proper.

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On November 7, 2011, plaintiff Fraserside IP L.L.C. ("Fraserside") filed a Complaint against Gamma Entertainment ("Gamma") and Wild Blue Media ("Wild Blue"), doing business as PornerBros.com, and operating the website www.PornerBros.com (collectively "the Gamma defendants" unless otherwise indicated), John Does, and John Doe Companies, alleging the following causes of action: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c).

On January 30, 2012, the Gamma defendants filed a Motion to Dismiss and Motion to Strike (docket no. 14). In their motion, the Gamma defendants contend that they are not subject to personal jurisdiction in Iowa and the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] The Gamma defendants also contend that, even if I were to find that the Gamma defendants are subject to personal jurisdiction in Iowa, the Complaint must be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3) and/or *forum non conveniens*. Alternatively, the Gamma defendants move to strike various portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

---

[1] Because the PornerBros website is not alleged to be a legal entity, personal jurisdiction is dependent on the activities of Gamma and Wild Blue.

On February 21, 2012, Fraserside filed a resistance to the Gamma defendants' motion. Fraserside argues that the Gamma defendants' Internet activities establish a sufficient basis for specific personal jurisdiction. Fraserside also contends that the facts support a finding of general jurisdiction over the Gamma defendants. Fraserside further asserts that jurisdiction over the Gamma defendants is proper under Federal Rule of Civil Procedure 4(k)(2). Fraserside also argues that venue is proper in this district and dismissal based on *forum non conveniens* is unwarranted. Finally, Fraserside argues that the Gamma defendants' Motion to Strike should be denied. The Gamma defendants filed a reply brief on February 28, 2012. On March 5, 2012, Fraserside filed a Supplemental Briefing in which it seeks to "clarify" statements made by Robert Bailey in his declaration.

## B. Factual Background

On a motion to dismiss, I must assume all facts alleged in the Complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The following factual background is drawn from the Complaint, documents attached to the Complaint, public records, and affidavits submitted by the parties.[2]

_____

[2] I note that I may consider public records, those materials that are embraced by the Complaint, and documents attached to the Complaint. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss,'[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'") (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)); *Noble Sys. Corp. v. Alorica Cent., L.L.C.,* 543 F.3d 978, 983 (8th Cir. 2008) ("the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint."); *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that a court "generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the

(continued...)

Plaintiff Fraserside is a wholly owned subsidiary of Fraserside Holdings, Ltd. ("Fraserside Holdings"). Fraserside was created in October 2010. Fraserside Holdings is a Cyprus-based company. Fraserside Holdings is a producer of adult motion pictures. Its adult films are distributed on a wide range of platforms, including mobile handsets in 45 countries, digital television in 24 countries, broadband internet, a South American cable channel, DVDs, and on demand and subscription based services on the Internet. Fraserside Holdings, in turn, is a wholly owned subsidiary of Private Media Group, Inc. ("Private Media"), a Nevada Corporation. Fraserside, its parent and sibling companies, collectively, are known commercially as "Private." Private has been producing adult entertainment materials since 1968 in a variety of forms, including print magazines, adult films, and online digital download and streaming.

Fraserside has protected its films through United States copyright registration. Since 1975, Fraserside Holdings has registered its intellectual property in more than 25

---

²(...continued)

complaint,' as well as materials that are "'necessarily embraced by the pleadings.'")(citations omitted). Materials necessarily embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters.,* 317 F.3d 820, 831 (8th Cir. 2003)); *see Jenisio v. Ozark Airlines, Inc., Ret. Plan,* 187 F.3d 970, 972 n.3 (8th Cir. 1999) ("A district court may consider documents on a motion to dismiss where . . . the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents."). I may also consider affidavits in deciding a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *See Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998) (noting that "'the court may inquire, by affidavits or otherwise, into the facts as they exist.'") (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)); *Block Indus. v. DHJ Indus., Inc.,* 495 F.2d 256, 260 (8th Cir. 1974) ("The 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.").

countries, including Australia, Brazil, Canada, Chile, Denmark, Europe, France, Germany, India, Italy, Japan, Mexico, Norway, New Zealand, Panama, Philippines, Poland, South Africa, Spain, Sweden, Switzerland, Taiwan, Thailand, United Kingdom, and Venezuela.

Fraserside Holdings has protected its trade names, PRIVATE, PRIVATE GOLD, PIRATE, and THE PRIVATE LIFE OF, through United States trademark and service mark registrations. Fraserside Holdings's PRIVATE trademark and service mark have been in continuous use in commerce since 1968. PRIVATE is United States Trademark Registration No. 1014975. It was registered on July 1, 1975, and renewed on September 6, 2005. Fraserside Holdings's PRIVATE GOLD trademark and service mark have been in continuous use in commerce since 2004. PRIVATE GOLD is United States Trademark Registration No. 3188677, and was registered on December 26, 2006. Fraserside Holdings's PRIVATE trademark and service mark design of two human female figures has been in continuous use in commerce since December 2004. PRIVATE is United States Trademark Registration No. 3389749, and was registered on May 28, 2008. Fraserside Holdings's PIRATE trademark and service mark have been in continuous use in commerce since May 24, 2000. PIRATE is United States Trademark Registration No. 3137445, and was registered on September 5, 2006. Fraserside Holdings's THE PRIVATE LIFE OF trademark and service mark have been in continuous use in commerce since September 1999. THE PRIVATE LIFE OF is United States Trademark Registration No. 2875138, and was registered on August 17, 2004.

Defendant Gamma is a private corporation, incorporated in Quebec, Canada, which specializes in complex information technology solutions and web hosting for the adult entertainment industry. Gamma's principal offices are located in Montreal, Quebec, Canada. Defendant Wild Blue is a wholly owned subsidiary of Gamma. Wild Blue's

principal office is located in Bridgetown, Barbados.  In August 2011, Gamma purchased and began to run an online adult entertainment website, www.PornerBros.com.  The PornerBros website is visited daily by over 2,500,000 internet users worldwide.  Roughly 21.1 percent of the website's visitors are from United States.  As of November 7, 2011, the PornerBros website was the 1,049 ranked website on the internet according to the number of visitors to the site.  The PornerBros website's "Terms of Use" offers the following description of the website:

> The PornerBros website allows for uploading, sharing and general viewing various types of content allowing registered and unregistered users to share and view visual depictions of adult content, including sexually explicit images.  In addition, PornerBros contains video content, information and other materials posted/uploaded by users.  PornerBros allows its users to view the Content and Website subject to the terms and conditions of this Agreement.

> The PornerBros website may also contain links to third party websites which are in no way owned or controlled by PornerBros.  PornerBros assumes no responsibility for the content, privacy policies, practices of any and all third party websites.  PornerBros cannot censor or edit the content of third-party sites.  You acknowledge that PornerBros will not be liable for any and all liability arising for your use of any third-party website.

PornerBros's Terms of Use at 1; Plaintiff's Ex. F.

The Gamma defendants operate the PornerBros website as on online internet service provider ("ISP") and have a registered Digital Millennium Copyright Act ("DMCA") agent for the website as well as a DMCA policy located on the website.  The PornerBros website offers content providers the opportunity to gain exposure on the site through video submissions and general traffic though banner spots and text ads.  The

website also provides traffic programs for webmasters.[3]  It is a video indexing and rerouting site which allows for the viewing of a variety of adult content videos by the linking of thumbnails to outside web sites featuring their own content.[4]  The thumbnail images on the website are all uploaded by third party users.  If the website's thumbnail images are clicked, they send the user to another website in order to actually watch a video.  Payment is not required to use the PornerBros website.[5]  The Gamma defendants do not control what images upload to the PornerBros website. The PornerBros website also features "AdultFriendFinder".  This feature purports to offer users the opportunity for online chats with women in the users' area.

Since the Gamma defendants began operating the PornerBros website, it has not permitted individual users to upload content onto the site. The website's terms of use require that any persons uploading material onto the website certify that the content being uploaded is either owned by the user or that the user is legally licensed to upload, publish, and share the content.

---

[3]A webmaster, also called a web architect, web developer, site author, or website administrator, "is a person responsible for maintaining one or may websites." Wikipedia, *Webmaster, available at* http://en.wikipedia.org/wiki/Webmaster (last visited April 4, 2012).

[4]Thumbnails "are reduced-sized versions of pictures, used to help in recognizing and organizing them, serving the same role for images as a normal text index does for words." Wikipedia, *Thumnail, available at* http://en.wikipedia.org/wiki/Thumbnail (last visited April 4, 2012).

[5]Fraserside contends that its employee, Robert Bailey, paid to join the PornerBros website.  *See* Declaration of Robert Bailey at 2.  The screen shot of his payment to watch Fraserside's adult motion picture "Cleopatra", however, reveals that his payment was not made to the PornerBros website but, instead, to fabilling.com.  See Plaintiff's Ex. D.

The Gamma defendants do not have any hosting equipment in Iowa and do not maintain any website servers within Iowa. The Gamma defendants have no officers, directors, or employees in Iowa. They have no telephone numbers, stores, offices, or bank accounts in Iowa. They have no agents for service of process in Iowa. No officer of the Gamma defendants has ever visited Iowa. The Gamma defendants do not advertise in Iowa.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(2) Standards and Personal Jurisdiction

In considering the Gamma defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), Fraserside's Complaint "must state sufficient facts . . . to support a reasonable inference that [each defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir. 2008). "'Once jurisdiction ha[s] been controverted or denied, [plaintiffs] ha[ve] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.,* 495 F.2d 256, 259 (8th Cir. 1974)); *see Viasystems, Inc. v. EBM-Papst St. George GMBH & Co., K.G.,* 646 F.3d 589, 592 (8th Cir. 2011). Fraserside need not, however, establish jurisdiction by a preponderance of the evidence until an evidentiary hearing is held, or until trial. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991). Where, as here, "'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Pangaea, Inc. v. Flying Burrito L.L.C.,* 647 F.3d 741, 745 (8th Cir. 2011)(quoting *Dakota Indus., Inc.,* 946 F.2d at 1387); *Johnson v. Arden*, 614 F.3d 785, 793-94 (8th Cir. 2010)( "'If the District Court

does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.'")(quoting *Epps v. Stewart Information. Serv. Corp.,* 327 F.3d 642, 646–47 (8th Cir. 2003)); *Romak USA, Inc. v. Rich,* 384 F.3d 979, 983-84 (8th Cir. 2004)(noting that a court "must view the evidence in the light most favorable to [plaintiffs] and resolve factual conflicts in its favor."). For Fraserside to survive the Gamma defendants' motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Fraserside "'need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc.,* 384 F.3d at 983 (quoting *Epps,* 327 F.3d at 647); *accord K-V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591 (8th Cir. 2011); *see Viasystems, Inc.,* 646 F.3d at 592; *Pangaea, Inc.,* 647 F.3d at 745.

I "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.,* 28 F.3d 910, 915 (8th Cir. 1994); *accord K-V Pharm. Co.,* 648 F.3d at 592 ("Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'")(quoting *Dever,* 380 F.3d at 1073 (internal quotation marks omitted)). Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution."[6] *Hammond v. Florida Asset Fin. Corp.,* 695

---

[6] Iowa's long-arm statute is actually set forth in two places: Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306. Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," Iowa Code § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," Iowa

(continued…)

N.W.2d 1, 5 (Iowa 2005) (discussing Iowa Rule of Civil Procedure 1.306). "As a result, the Court is left with the sole issue of whether exercising personal jurisdiction over [the] nonresident Defendant is consistent with principles of due process." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499-500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc. (Bell Paper I)*, 22 F.3d 816, 818 (8th Cir. 1994) ("[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"The Due Process Clause requires 'minimum contacts' between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant." *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows:

> "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." By defendant's reasonable anticipation, we mean "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." We have set "a five-part

---

[6](…continued)
R. Civ. P. 1.306. Rule 1.306 is the provision that specifically extends Iowa's jurisdictional reach to the federal constitutional limits. *See Hammond*, 695 N.W.2d at 5; *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'"

*Id.* (citations omitted); *see K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 667 F.3d 515, 518 (8th Cir. 2010); *Steinbuch*, 518 F.3d at 585-86; *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006); *Epps v. Stewart Information. Servis. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003); *Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 613 (8th Cir. 1998); *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Eighth Circuit Court of Appeals has further instructed that:

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citations omitted).

"'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of

the lawsuit.'" *Johnson*, 444 F.3d at 955-56 (quoting *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). If the court determines that a defendant has the requisite "minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see Luv N. Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("It remains for us to inquire whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff makes its *prima facie* case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (citation and quotation omitted)). These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantial social policies."

*Burger King Corp.*, 471 U.S. at 476-77 (quoting *World Wide Volkswagen*, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477. If, however, a defendant "seeks to defeat jurisdiction" when the defendant purposefully "directed his activities at forum residents"—i.e., when minimum contacts are clearly established—the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

### B. Personal Jurisdiction Analysis

Fraserside contends that the Gamma defendants' contacts with Iowa are sufficient to establish either specific jurisdiction or general jurisdiction over them. I will consider each of these jurisdictional grounds in turn.

### 1. General jurisdiction

"A court obtains general jurisdiction 'against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'" *Johnson*, 614 F.3d at 794 (quoting *Dever.*, 380 F.3d at 1073)(quoting in turn *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16 (1984)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *see Viasystems, Inc.*, 646 F.3d at 592 (quoting *Brown*, 131 S. Ct. at 2853-54). Fraserside contends that the Gamma defendants are subject to general personal jurisdiction based on the website, www.PornerBros.com, owned and/or run by the Gamma defendants.

In *Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 710 (8th Cir .2003), the Eighth Circuit Court of Appeals adopted the "sliding scale" approach established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa.1997), to determine if website contacts provide a basis for *specific* jurisdiction. *Lakin,* 348 F.3d at 710 ("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction—, *i.e.,* ones in which we need only find 'minimum contacts.'"). The "sliding scale" approach recognizes that "'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the

commercial activity that the entity conducts over the Internet.'" *Id.* (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124). In *Lakin,* the Eighth Circuit Court of Appeals observed that:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Id.* at 710–11 (quoting *Zippo Mfg. Co.,* 952 F. Supp. at 1124).

The Eighth Circuit Court of Appeals concluded that, while the *Zippo* model is an appropriate approach when considering specific jurisdiction, it is insufficient, in and of itself, for determining whether a defendant's contacts are both substantial and continuous for purposes of general jurisdiction. *Id.* at 711; *see CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) (noting that "the interactivity of a non-resident defendant's website typically 'provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction.'") (quoting *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011)); *Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir. 2002) (noting that the *Zippo* sliding scale "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may

not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."). As the Eighth Circuit Court of Appeals noted, "[u]nder the *Zippo* test, it is possible for a [website] to be very interactive, but to have no quantity of contacts." *Lakin,* 348 F.3d at 712. Thus, the court of appeals held that the *Zippo* test was only a starting point in conducting a website-based general jurisdiction analysis. In addition to considering the characteristics of a website under the *Zippo* test, it is also necessary to weigh the quantity of the defendant's contacts via its website. *See id.* Consequently, in considering whether the Gamma defendants' contacts with Iowa are sufficient to establish general jurisdiction, I must consider, *inter alia,* the nature, quality, and quantity of those contacts. *See id.* (citing *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir. 1965)); *see also Pangaea, Inc.,* 647 F.3d at 746 n.4; *Johnson,* 614 F.3d at 794; *Steinbuch,* 518 F.3d at 585.

Gamma is a private Canadian corporation with its principal offices in Montreal, Quebec, Canada. Wild Blue, a wholly owned subsidiary of Gamma, has its principal offices in Barbados. The Gamma defendants have no offices in Iowa, no employees in Iowa, no telephone numbers in Iowa, no bank accounts in Iowa, and no agent for service of process in Iowa. The Gamma defendants do not advertise in Iowa. No officer or director of the Gamma defendants has ever visited Iowa. The Gamma defendants do not maintain any of their servers within Iowa. Rather, the Gamma defendants' servers are all located in Gamma's principal offices in Quebec. All of the Gamma defendants' records are also located at Gamma's principal offices in Quebec. The Gamma defendants' total absence of contacts with the State of Iowa is the antithesis of the type of continuous and systematic contacts necessary for exercising general personal jurisdiction over them. *See VGM Fin. Servs. v. Singh*, 708 F. Supp. 2d 822, 835 (N.D. Iowa 2010) (finding defendant's contacts with Iowa insufficient to establish general jurisdiction where, among

other factors, defendant did not have an office, telephone number, bank account or any employees, representatives, or agents in Iowa).

The PornerBros website permits its users to register an account, but, it does not charge for such registration. The only evidence Fraserside has presented of any Iowa resident having registered for, or even visited, the PornerBros website is the affidavit of its own employee, Robert Bailey, who registered for the website from Fraserside's Iowa office in February 2012, well after this case had been filed and after the Gamma defendants had filed their motion to dismiss. Thus, Fraserside has presented no evidence of any Iowa resident having registered or visited the PornerBros website before this case was filed. *See Lakin,* 348 F.3d 704, 712–13 (finding interactive website insufficient to confer general jurisdiction without information about the quantity of defendant's contacts with state residents through the website). Thus, I conclude Fraserside has failed to meet its burden of demonstrating that Iowa courts have general jurisdiction over the Gamma defendants. *See Viasystems, Inc.,* 646 F.3d at 595; *Wells Dairy, Inc.,* 667 F.3d at 518; *Miller v. Nippon Carbon Co., Ltd.,* 528 F.3d 1087, 1090 (8th Cir. 2008); *Romak,* 384 F.3d at 983–84.

### 2. *Specific jurisdiction*

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Brown,* 131 S. Ct. at 2851 (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 HARV. L. REV. 1121, 1136 (1966)). Thus, "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson,* 614 F.3d at 795 (quoting *Steinbuch,* 518 F.3d at

586). Fraserside asserts that specific jurisdiction over the Gamma defendants exists because they have directed tortious conduct at it, an Iowa business. Fraserside relies upon the *Calder* effects test formulated by the United States Supreme Court in *Calder v. Jones,* 465 U.S. 783 (1984) and cites the recent decision in *CYBERsitter, L.L.C. v. People's Republic of China*, 808 F. Supp. 2d 958, 972-73 (C.D. Cal. 2011), in which the district court applied the Ninth Circuit Court of Appeals's expansive interpretation of *Calder* to conclude that it had specific jurisdiction over defendant Chinese companies. The *Calder* effects test provides that:

> "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]."

*Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT,* 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)); *see Viasystems, Inc.*, 646 F.3d at 595 (quoting *Johnson*, 614 F.3d at 796). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390–91 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alberta,* 873 F.2d 1257, 1260 (9th Cir. 1989)). Moreover, the Eighth Circuit Court of Appeals, unlike the Ninth Circuit Court of Appeals, construes the *Calder* effects test narrowly. *See Johnson*, 614 F.3d at 796-97 ("Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. . . We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere

18

effects in the forum state are insufficient to confer personal jurisdiction."); *see also Furminator, Inc. v. Wahba*, No. 4:10CV01941, 2011 WL 3847390, at *3 (E.D. Mo. Aug. 29, 2011) (noting that the Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly); *Oticon, Inc. v. Sebotek Hearing Sys., L.L.C.,*, ---F. Supp.---, 2011 WL 3702423, at *15 (D.N.J. Aug. 22, 2011) (noting in *Johnson*, the Eighth Circuit Court of Appeals expressly clarified its position that it construes the *Calder* effects test narrowly); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 219967, at *4 (E.D. Mo. June 7, 2011) (observing that "[t]he Eighth Circuit has narrowly construed the *Calder* effects test. . ."). Although I accept as true Fraserside's allegations that the Gamma defendants intentionally infringed Gamma's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that any of the Gamma defendants "uniquely or expressly aimed" its tortious acts at Iowa. *Johnson,* 614 F.3d at 796. Thus, I conclude that Fraserside has failed to demonstrate that any of the Gamma defendants' actions were "'performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.,* 946 F.2d at 1390–91 (quoting *Brainerd,* 873 F.2d at 1260).

Even assuming, *arguendo*, Fraserside could demonstrate that the Gamma defendants' actions were aimed at Iowa and that the consequences of their actions were felt in Iowa, the *Calder* effects test is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson,* 614 F.3d at 796–97. I must also consider the five factors developed by the Eighth Circuit Court of Appeals in determining whether a nonresident defendant has sufficient minimum contacts with the forum state to exercise personal jurisdiction over him. As discussed above, I must consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing its residents a forum; and (5) the

convenience of the parties. *See K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc.*, 667 F.3d at 518 *Steinbuch*, 518 F.3d at 585-86; *Johnson*, 444 F.3d at 956. Of these factors, "the first three factors are of primary importance, and the last two are 'secondary factors.'" *Id.* After considering these five factors, I conclude that Fraserside has not demonstrated that any of the Gamma defendants have sufficient minimum contacts with Iowa to justify exercising personal jurisdiction over them. As discussed above, the Gamma defendants have a total absence of contacts with the State of Iowa. Thus, the nature and quality of the Gamma defendants' contacts with Iowa; the quantity of contacts with Iowa; and the relation of the cause of action to the Gamma defendants' contacts all decidedly weigh against exercising personal jurisdiction over them. While Iowa has an interest in providing a local forum in which its resident corporations may litigate claims against non-residents, Iowa's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi–Tel Holdings, Inc., v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 525 (8th Cir. 1996). Additionally, the convenience of the parties is, at best, a neutral factor as Fraserside's counsel is Arizona-based. Thus, both parties will be required to travel to litigate this case regardless of my ruling on the Gamma defendants' motion.

Thus, after considering all five relevant factors, I conclude that the exercise of general or specific personal jurisdiction over any of the Gamma defendants is inappropriate under the Iowa long-arm statute and fails to comport with due process. Thus, viewing the circumstances of this case as a whole, Fraserside has failed to make a *prima facie* case of personal jurisdiction over any of the Gamma defendants under Iowa's long-arm statute.

### C. Federal Long-Arm Statute

Fraserside also argues that, even if it did not make a *prima facie* showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).[7] *See United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 36 (1st Cir. 1999)(observing that Rule 4(k)(2) is "a sort of federal long-arm statute."). Rule 4(k)(2) permits a court to exercise personal jurisdiction over a defendant if: (1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process. *Synthes (U.S.A.) v. G.M. Dos Reis Jr.,* 563 F.3d 1285, 1293–94 (9th Cir. 2009); *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 720 (5th Cir. 1996).[8] I take up each of these requirements *seriatim.*

---

[7] Rule 4(k)(2) states:

> **(2)  Federal Claim Outside State-Court Jurisdiction**. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2).

[8] The Eighth Circuit Court of Appeals has not discussed Rule 4(2)(k). Thus, I look to decisions from the other federal courts of appeals for direction.

### 1. Claim arises under federal law

Fraserside brings six claims, all of which arise under federal law: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c). Since Fraserside has pled copyright and trademark claims, it is uncontested that those claims satisfy the first requirement of Rule 4(k)(2).

### 2. No state with personal jurisdiction over defendants

The second requirement of the Rule 4(k)(2) requires that the Gamma defendants not be subject to personal jurisdiction in any state. Rather than requiring the plaintiff to meet the onerous burden of proving that the defendant is not subject to personal jurisdiction, most circuits have adopted the following approach:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.,* 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); *see Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1415 (Fed. Cir. 2009); *Holland Am. Line, Inc. v. Wartsila N.A.,* 485 F.3d 450, 461 (9th Cir. 2007); *Mwani v. bin Laden,* 417 F.3d 1, 11 (D.C. Cir. 2005); *Adams v. Unione Mediterranea Di*

*Sicurta,* 364 F.3d 646, 651 (5th Cir. 2004).  Because a majority of the federal courts of appeals have adopted this approach, I presume that the Eighth Circuit Court of Appeals would also follow it.

The Gamma defendants concede that they are subject to personal jurisdiction in California.  *See* The Gamma defendants' Reply Br. at 4.  As such, I conclude that Rule 4(k)(2) does not provide a basis for personal jurisdiction over the Gamma defendants.  *See Touchcom, Inc.,* 574 F.3d at 1415 (noting that "the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule when it designates a suitable forum in which the plaintiff could have brought suit.").

### D.  Limited Jurisdictional Discovery

Fraserside alternatively contends that, even if it did not make a *prima facie* showing of personal jurisdiction, I should delay ruling on the Gamma defendants' motion and permit Fraserside limited jurisdictional discovery.  The Federal Rules of Civil Procedure provide for liberal discovery.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.").  Courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]."  *In re Multi–Piece Rim Prods. Liab. Litig.,* 653 F.2d 671, 679 (D.C. Cir. 1981).  When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.  *See Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011) (noting that "'[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'") (quoting *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1074 n.1 (8th Cir. 2004)

(quoting in turn *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 402 (4th Cir. 2003)); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions"); *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (holding that district court did not abuse its discretion in denying jurisdictional discovery where plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)); *see also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Here, Fraserside points to the PornerBros website's "AdultFriendFinder" feature which purports to offer live online chats with women in Iowa. Fraserside offers a screen capture of Robert Bailey's online chat using this feature with an individual using the screen name "lookn_forsumfun", who purports to be a 24 year old female from Marshalltown, Iowa. In the text, lookn_forsumfun said, "Hey, you! Says you are in Marshalltown. Im [sic] in Marshalltown too". Fraserside Ex. C. at 5. In response, Bailey wrote: "I am in northwood [sic], where are you?" Fraserside Ex. C. at 5. Lookn_forsumfun responded, "Marshalltown by the school". Fraserside Ex. C. at 5. Fraserside has also offered screen captures of three other females, using the screen names "babypooks", "michelle102403" and "littlehotgirl1", who all also purport to be from Marshalltown, Iowa. Fraserside Ex. C. at 2-4. Fraserside has also offered a screen capture of an individual using the screen name "tinad2000" who purports to be a 24 year old female from "Northwood by the

school".  Fraserside Ex. C. at 1.  It is unclear from the limited screen captures of these online chats whether these women are actually from Iowa.  There is no information in the record about the quality or quantity of contacts the "AdultFriendFinder" feature has facilitated in Iowa, if any.  Presumably this information is available to Fraserside only through discovery. *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 455 (3d Cir. 2003) (noting that "any information regarding Step Two's intent vis-a-vis its Internet business and regarding other related contacts is known by Step Two, and can be learned by Toys only through discovery").  Thus, Fraserside has proffered facts that, if proven, would affect my exercise of jurisdiction over the Gamma defendants.  Accordingly, I grant Fraserside's request for jurisdictional discovery conditionally, subject to my ruling on the Gamma defendants' request for dismissal based on improper venue or *forum non conveniens*.  The Gamma defendants' Motion to Dismiss for lack of personal jurisdiction is denied without prejudice.

### E.  Improper Venue

The  Gamma defendants also assert that all claims against them should be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. They argue that none of the Gamma defendants are residents of the Northern District of Iowa.  The  Gamma defendants also argue that actions giving rise to Fraserside's claims did not substantially arise or occur in this district, because the claims allegedly arose out of actions of the Gamma defendants which occurred outside the Northern District of Iowa. They further argue that the property involved in this action is not located in this district. On the other hand, Fraserside argues that venue *is* proper in this district, under the provisions of 28 U.S.C. § 1391(b)(3), because "there is no district in which the action may

otherwise be brought as provided in this section" and the Gamma defendants are subject to personal jurisdiction in the Northern District of Iowa.

### 1. Applicable standards

Rule 12(b)(3) provides that a challenge to venue may be made by motion. *See* FED. R. CIV. P. 12(b)(3). A hearing on such a motion may be appropriate where facts on which the motion or allegations of venue are based are genuinely in dispute. *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1139 (9th Cir. 2004). However, whether or not to hold such a hearing and the scope and method of such a hearing are within the discretion of the district court. *Id.* Therefore, the court may deny a Rule 12(b)(3) motion without a hearing, but does so without prejudice to later reassertion should later development of the record eliminate genuine issues of fact. *Id.* Thus, "[t]o survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir. 2004). As the Sixth Circuit Court of Appeals has explained,

> [A] Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue.

*Kerobo v. Southwestern Clean Fuels Corp.,* 285 F.3d 531, 538 (6th Cir. 2002) (citing 28 U.S.C. § 1406 as the statute providing remedies for improper venue and 28 U.S.C. § 1404 as the statute providing remedies for inconvenient venue). Therefore, I turn to consider the statutes on which venue is based in this case.

## 2. *Analysis*

"One of the central purposes of statutory venue is to ensure that a defendant is not haled into a remote district, having no real relationship to the dispute." *Richards v. Aramark Servs., Inc.,* 108 F.3d 925, 928 (8th Cir. 1997) (internal quotation marks and citations omitted) (also explaining that "[v]enue requirements exist for the benefit of defendants."). Where, as here, no special venue statute is applicable, the general venue statute, 28 U.S.C. § 1391, applies. *Woodke v. Dahm,* 70 F.3d at 983, 985 (8th Cir. 1995) (the Lanham Act contains no "special venue provision," so the plaintiff's Lanham Act claim was subject to "the general venue statute," § 1391); *Bredberg v. Long,* 778 F.2d 1285, 1287 (8th Cir. 1985) (the FLSA contains no "special venue provision," so "the general venue provisions of 28 U.S.C. § 1391 govern" such claims). The general venue statute provides as follows:

> **(b) Venue in general.**--A civil action may be brought in--
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> >
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> >
> > (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Venue premised on § 1391(b)(3) is relatively broad, presumably owing to a desire to provide some forum for relief of claims, when no forum would

otherwise be available. This subsection is only applicable if there is no district in which venue is proper under one of the venue statute's first two provisions. *See FS Photo, Inc. v. Picture Vision, Inc.,* 48 F. Supp. 2d 442, 448 (D.Del. 1999) ("[S]ection 1391(b)(3) may only be utilized if there is no other district which would have both personal jurisdiction and venue as to all defendants."). As discussed above, it is unclear at this juncture whether Fraserside will be able to establish that the Gamma defendants are subject to personal jurisdiction in this district. Resolution of that question must await discovery. Thus, the question of whether venue properly lies in this district must also await resolution of the personal jurisdiction issue. The Gamma defendants' Motion to Dismiss for improper venue is denied without prejudice.

### F. Forum Non Conveniens

The Gamma defendants further assert that all claims against them should be dismissed pursuant to the doctrine of *forum non conveniens*. The Gamma defendants argue the Province of Quebec, Canada, is a better alternative forum because Gamma is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada. Fraserside responds that its choice of forum should not be disturbed. Fraserside argues that because United States's laws are controlling on its copyright and trademark claims, a United States's district court will have an interest in interpreting its own law and protecting a resident corporation from trademark infringement abroad. *See Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1336 (9th Cir. 1984)(concluding that the district court failed to properly weigh Arizona's interests in interpreting its own laws and "in protecting its companies from trademark infringement abroad to preserve the state's economic vitality").

"The doctrine of *forum non conveniens* allows a court to decline to exercise jurisdiction and dismiss a case where that case would more appropriately be brought in a foreign jurisdiction." *K-V Pharm. Co. v. J.Uriach & CIA, SA*, 648 F.3d 588, 597 (8th Cir. 2011) (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 447–49, 449 n. 2 (1994)). Whether an action may be dismissed for *forum non conveniens* is governed by how a court weighs the factors identified in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947). *See K-V Pharm. Co., SA*, 648 F.3d at 597. The Court explained those private interest and public interest factors as follows:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [ *sic* ] of a judgment if one is obtained. . . .

> Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp.* 330 U.S. at 504, 508–09; *accord American Dredging,* 510 U.S. at 448–49.

Nonetheless, "the doctrine is to be applied only in 'exceptional circumstances': '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *K-V Pharm. Co.,* 648 F.3d at 597-98 (quoting *Gulf Oil,* 330 U.S. at 504, 508). The Gamma defendants have "the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on *forum non conveniens.*" *Reid–Walen v. Hansen,* 933 F.2d 1390, 1393 (8th Cir. 1991); *accord K-V Pharm. Co.,* 648 F.3d at 598; *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 784 (8th Cir. 2009).

Here, the Gamma defendants have failed to carry their burden of persuasion with respect to the elements of *forum non conveniens*, and dismissal is inappropriate. The first factor—the relative ease of access to sources of proof—favors Fraserside. The Gamma defendants argue that their web servers, company records, and employees are located in Canada. The Gamma defendants' travel inconveniences or the location of its documents do not necessarily demonstrate their difficulty of access to sources of proof. The Gamma defendants will have access to their companies' records, whether this case is litigated in Iowa or Quebec. The Gamma defendants have not identified any witnesses in the United States or Canada from whom discovery may become difficult to obtain if the case is litigated in a foreign court. The Gamma defendants have also not explained why traveling to Iowa would create a burden to them under this factor.

The next factor, availability of compulsory process for attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses, does not favor either side. No party has identified witnesses who are unwilling to participate so that compulsory process will be required.

Turning to the public interest factors, the United States has an interest in protecting its federally recognized copyrights and trademarks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 556 (9th Cir. 1992). The complained-of injury to Fraserside's trademarked and copyrighted films occurred in the United States, and concern the Gamma defendants' commerce within the United States, including Iowa residents. Moreover, it would be most efficient for a United States court to preside over this case, which requires application of United States law.

Thus, weighing both the private and public interest factors, I have little difficulty finding that the Gamma defendants have failed to meet their burden of establishing that this case should be dismissed under the doctrine of *forum non conveniens*. Therefore, I deny that portion of the Gamma defendants Motion to Dismiss under the doctrine of *forum non conveniens* with prejudice.

## III. CONCLUSION

For the reasons previously discussed, the Gamma defendants do not have sufficient "minimum contacts" with Iowa such that the maintenance of this lawsuit would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. However, because I grant Fraserside's request for jurisdictional discovery, the Gamma defendants' Motion to Dismiss for lack of personal jurisdiction and improper venue is denied without prejudice.[9] That portion of the Gamma defendants' Motion to Dismiss under the doctrine of *forum non conveniens* is denied with prejudice.

_____

[9] Because Fraserside likely will seek to amend its Complaint following the completion of jurisdictional discovery, the Gamma defendants' Motion to Strike portions of the Complaint is denied without prejudice.

**IT IS SO ORDERED.**

**DATED** this 5th day of April, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA